The bill prayed for a conveyance of the defendant's life estate, or for an injunction to restrain the defendant from prosecuting her action unless she would pay the plaintiff for the improvements made by him upon the land. The defendant, by plea, relied upon the act of 1819 (Rev., ch. 1016), avoiding parol contracts for the sale of land and slaves. *Page 296 
The case was argued several terms ago by
The plaintiff, Lisitta Baker, is the owner in fee of the tract of land described in the bill, subject to the life estate of the defendant, and one object of the bill is to enforce the execution of an agreement, on the part of the defendant, to convey this life estate to the said plaintiff. So far as the bill seeks this relief, it must be dismissed. The alleged agreement is by parol, and the defendant insists on the act of 1819, which declares all such parol agreements void, in law and equity. But the bill asks for relief of a different kind. It prays that the defendant may be enjoined from turning the plaintiff, John, out of possession unless she will make him a reasonable allowance for the valuable improvements he has put upon the land. This claim to relief is not founded upon the supposed existence of any contract of which it seeks execution, or for the breach of which it asks compensation, or damages. It is an appeal to the Court to prevent fraud. The case made is, that the plaintiff entered upon this land by the license of the defendant, and, therefore, was not a wrongdoer; that the land was then in woods, wholly useless and unproductive; that he reclaimed the land, made it fit (383) for cultivation, built his dwelling and put other valuable and lasting improvements upon it; and all this was done, not only under the eye of the defendant, but upon her assurances that he should not be turned out of his home nor deprived of the fruits of his labor; that she has thought proper to revoke this license, is about to eject him at law and thus appropriate wholly to herself the improvements, which, by these misrepresentations, she has procured to be made.
It is difficult to explain the grounds on which this relief is asked for, more distinctly than appears from a statement of the case. It is a misrepresentation, I think, to suppose that the plaintiff asks damages. He prays that the defendant may be restrained from the exercise of her legal power to turn him out of house and home unless she will consent to do what conscience requires — make him an equivalent for the worth of his labor, dishonestly taken to herself. The bill does not ask compensation for work and labor done at the request of the defendant, for it was not for the defendant's benefit, but for his own, and on an assurance, which she cannot in conscience violate, that he should have the benefit thereof.
It is needless to determine whether any action could lie at law to get compensation for the labor if she should be permitted to wrest the fruits of it from him; for if it could, it must be on the principle that to *Page 297 
prevent so flagrant an injustice the law would, on a principle of equity, imply a promise to pay against the fact. A court of equity does not entertain less abhorrence for fraud than a court of law, and, when it can exercise jurisdiction, will go as far to redress or prevent it. It seems to me it has here a plain jurisdiction by enjoining the defendant until shewill do justice.
But I think there could be no adequate and perhaps no remedy at law. An action for work and labor done or money expended will not lie, except it be done for the use and at the request of the defendant. When it has been done for his use, without a previous request, a subsequent
acceptance may supply the want of that request. But where it was not done originally for his use, but he gets the benefit of it (384) because in law it was his, as an appurtenance of the property to which it is affixed, it is inconceivable to me how in law he can be made to pay for it. Can a man be made to pay where he gets nothing but his own?
To hold that there is no relief, either in law or equity — that a man may be stripped of the entire fruits of his toil for years by any one who can cajole him into the weakness of expending them on his land by assurances for a future title — is a doctrine which seems to be subversive of first principles.
This, I think, is a question altogether of a different nature from that in Denton v. Stewart, 1 Cox, 258; Todd v. Gee, 17 Ves., 273, and the other cases cited in the argument. It is not a case of damages for the nonperformance of a contract, valid in law, which the defendant has disabled herself from performing, or is unable to perform, for the want of a title, or for compensation for a partial defect of title, or for a difference in the estate from the description in the contract. Though equity, in cases of the latter kind, makes compensation out of the purchase money, it very properly, in the former, refuses to give damages or entertain a bill in the alternative for a conveyance or for the damages or compensation. That is plainly a question of legal damages, which ought, therefore, to be left at law. The vendor gets no benefit by the labor of the plaintiff in such a case, for the very cause of the damage is that the vendor is not the owner of the estate. If he were, the Court would compel a specific performance. As that cannot be, a decree for compensation is, in effect, a decree for the damages arising on the breach of the agreement. This case, on the contrary, is founded on the equity of the plaintiff against the defendant as the owner of the estate, who takes it away, with its improvements, made by the plaintiff. The relief goes upon her unconscientious gains. True, the plaintiff sets forth the contract and asks for its performance. But that is not an alternative, in the sense before spoken of. It was necessary for him to do so, *Page 298 
that he might offer an acceptance on his part, without which he would have no equity, for he would have no right to compensation if the defendant were willing to let him enjoy the fruit of his labor. He must, therefore, give her the election. Having elected to take the land, (385) the defendant ought to pay the plaintiff, not for the land, nor damages for a breach of the agreement, but for his labor, of which she fraudulently sweeps the profits.
As the case is supported by the proofs, I would not permit the defendant to eject the plaintiff until she make a fair allowance for the value to her of the improvements which he has made on the land. It may be that this has fully been made through his use of the land since the delivery of it was demanded. To enable us to ascertain what is just between the parties, let the clerk and master of Pitt inquire and report the additional value conferred on the defendant's life estate in this land by means of the plaintiff's labor and expenditures thereon, and also the reasonable value of the use of the land since 1 January, 1831, when possession was required to be surrendered.
GASTON, J., concurred with the Chief Justice.